# UNITED STATES DISTRICT COURT
For the District of Delaware

| | | |
|---|---|---|
| WILLIAMSBURG FURNITURE, INC., Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: ________________________ |
| | ) | |
| LIPPERT COMPONENTS, INC., Defendant. | ) | Judge: ____________________________ |
| | ) | **JURY TRIAL DEMAND** |

## COMPLAINT FOR DECLARATORY JUDGEMENT OF NON-INFRINGEMENT, AND FALSE ADVERTISING AND UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)

The Plaintiff, Williamsburg Furniture, Inc. ("Williamsburg"), for its Complaint against the Defendant, Lippert Components, Inc. ("Lippert"), alleges as follows:

## THE NATURE OF THE ACTION

1. This lawsuit seeks a declaratory judgement against Lippert, confirming that Williamsburg does not infringe U.S. Patent No. 8,739,330 ("the '330 patent"), because that patent is invalid and/or unenforceable. This lawsuit also seeks judgement against Lippert for false advertising and unfair competition, through Lippert's allegations of patent infringement by Williamsburg to customers of Williamsburg, which caused damages to be sustained by Williamsburg in the form of lost sales and increased costs of doing business. A copy of the '330 patent is attached hereto as Exhibit 1.

## THE PARTIES TO THE ACTION

2. Williamsburg is incorporated under the laws of the State of Indiana, and has its principal place of business at 2096 Cheyenne Street, Nappanee, Indiana 46550.

3. Lippert is incorporated under the laws of the State of Delaware, and has a principal place of business at 3501 County Road 6 East, Elkhart, Indiana 46514. Lippert has a Registered Agent address of 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4. As detailed further below, Lippert has threatened Williamsburg with patent infringement litigation, based upon products which Williamsburg is now and has been selling. Williamsburg denies that patent infringement, and an actual controversy has arisen and now exists between the parties in that regard. Williamsburg seeks a judicial declaration that it does not infringe Lippert's patent, and an order enjoining Lippert from making such accusations about Williamsburg to third parties. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§1331, 1338(a), 2201, and 2202.

5. As detailed further below, Lippert has made false and/or misleading representations of fact to customers of Williamsburg, which misrepresent the nature, characteristics, and/or qualities of products sold by Williamsburg, and Williamsburg believes it has been damaged by such actions of Lippert. Accordingly, Williamsburg alleges that Lippert has violated 15 U.S.C. §1125(a)(1)(B), and this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a) and (b).

6. This Court has personal jurisdiction over Lippert because Lippert has purposefully incorporated itself and maintained its existence under the laws of the State of Delaware, and it

conducts business in the State of Delaware, and Lippert purposefully avails itself of the privileges of doing business in the State of Delaware. Thus, Lippert resides in the State of Delaware. The State of Delaware is within this judicial district. Accordingly, venue is proper in this Court under 28 U.S.C. §1391(b)(1).

## BACKGROUND FACTS AS TO CONDUCT BETWEEN THE PARTIES

7. Williamsburg makes and sells certain tri-fold sofas/beds, which convert from seating sofas to sleeping beds, and are typically sold for use in a recreational vehicle ("RV"). Williamsburg sells these under its "Visionary" model name. Prior to May 1, 2019, Patrick Industries, Inc., ("Patrick") purchased such products made by Williamsburg, through its subsidiary, Praxis Group LLC. Patrick transferred these Williamsburg products to Allure Furniture, LLC ("Allure"). Allure is a customer of Williamsburg for the tri-fold sofa/beds, and resells those products to third parties (such as RV manufacturers) as a distributor for Williamsburg. Patrick had previously been threatened with infringement of the '330 patent by Lippert on account of these tri-fold sofa/beds, but had agreed to pay Lippert a license fee to allow it to continue to sell those products. A copy of the license agreement between Lippert and Patrick is attached hereto as Exhibit 2. Patrick paid the royalties due on the tri-fold sofa/beds it transferred to Allure.

8. On May 1, 2019, Lippert sent a letter to Allure accusing it of infringing the '330 patent because of its offering to sell the tri-fold sofa/beds it obtained from Patrick. That letter included a copy of the '330 patent and a "claim chart," particularizing the infringement, as it would need to be in litigation. Lippert demanded that Allure "cease and desist" from that infringement. A copy of that demand letter is attached hereto as Exhibit 3.

9. Prior to or substantially contemporaneous with sending the demand letter to Allure, Ryan Smith, a Vice-President of Lippert and one of the named inventors on the '330 patent, telephoned Chad Cunningham of Allure and asserted to Mr. Cunningham that both Allure and Williamsburg were infringing upon the '330 patent. In response to these allegations by Lippert, on May 10, 2019, Allure and Williamsburg informed Lippert through counsel that its allegations of patent infringement were erroneous, because Patrick had paid the royalties due for the tri-fold sofa/beds which Allure had, and Lippert's patent rights, if any, were then "exhausted" under the "first sale doctrine." A copy of that response is attached hereto as Exhibit 4.

10. In reply, on May 22, 2019 (and with a response reminder on June 14), Lippert contended that the royalties had not been paid, and demanded either proof of that payment or that "Williamsburg will cease and desist from infringing activity." Otherwise, "Lippert will be moving forward against Allure and Williamsburg." A copy of that reply is attached hereto as Exhibit 5.

11. In response, on June 21, 2019, Williamsburg more specifically addressed the royalty payment issue for the past products, and then turned to address the infringement issues related to future products, now recognizing more fully the extent of Lippert's accusation to cover "the tri-fold sofas purchased by Allure from all sources," not merely those previously obtained from Patrick. A copy of that response is attached hereto as Exhibit 6. In particular, Williamsburg expressly stated that it is:

> "not paying Lippert anything, and they are not stopping any activity based upon the '330 patent. These bold refusals are based upon the blatant invalidity of the '330 patent and the probable fraud by Lippert both in obtaining the '330 patent and in asserting it against Patrick Industries."

Williamsburg then backed up these conclusions with a detailed factual report on the true nature of the "prior art" and the prosecution history of the application for the '330 patent. Williamsburg concluded the response by stating

> "we require from Lippert and express and unequivocal statement that it will not seek to enforce the '330 patent against [Williamsburg]," and that "[I]n order to mitigate the damage already caused by Lippert's statements to Heartland about our products, we will NOT be keeping that statement confidential."

"Heartland" in that context referred to Heartland Recreational Vehicles, a RV manufacturer to whom the accused tri-fold sofa/beds made by Williamsburg had been offered for sale.

12. On July 19, 2019, when Lippert had even by that time provided no reply to the June 21 letter, counsel for Williamsburg telephoned counsel for Lippert and again requested Lippert's agreement not to sue Williamsburg for infringement of the '330 patent. Lippert's counsel had no word back from Lippert indicating agreement, as of the date of that telephone call. On August 8, 2019, a follow up email was sent to Lippert's counsel in that regard. Lippert's counsel then responded on August 9 by stating that "I've been specifically instructed not to communicate with you on my client's behalf while the parties are negotiating directly." Williamsburg's counsel immediately informed Lippert's counsel via return email that there were no such negotiations. A copy of the email thread in that regard is attached hereto as Exhibit 7.

13. At no time since did Lippert retract its accusations of patent infringement against Williamsburg, or agree that it would not sue Williamsburg for infringement of the '330 patent. During June of 2019, Lippert did contact Earl Williams at Allure to see if Allure would be taking over the license agreement Patrick had in place with Lippert for the '330 patent. Allure did not agree

to do that. Williamsburg was not involved in those discussions, nor were there any other direct negotiations between Williamsburg and Lippert concerning the '330 patent.

14. Both before and after receiving the June 21, 2019 response, Lippert contacted Heartland, and other potential and actual customers for Williamsburg's tri-fold sofa/bed, and told those third parties that they should not purchase the Williamsburg product, and instead they should purchase Lippert's competing sofa/bed because:

a. The tri-fold sofa/bed infringed the '330 patent,

b. If they purchased that tri-fold sofa-bed, their continued supply of that product was at risk, because Lippert was going to file a lawsuit and shut down production of those products, and/or

c. They would be at legal risk themselves if they bought the tri-fold sofa/bed.

As a result of these and similar false statements of fact by Lippert, RV manufacturers who would otherwise have purchased the Williamsburg tri-fold sofa/bed, either directly or indirectly (through Allure), did not do so. Further, as a result of these and similar false statements of fact by Lippert, Williamsburg (either directly or indirectly through its customer and distributor, Allure) was forced to incur additional costs and efforts to keep its existing customers for those products from ceasing purchases of more the tri-fold sofa/beds. These actions by Lippert violate 15 U.S.C. §1125(a)(1)(B).

15. After receiving the June 21, 2019 response, Lippert made no effort to correct or withdraw its prior false statements to customers of Williamsburg, concerning the accusations that Williamsburg's tri-fold sofa/bed products infringe the '330 patent, or that Lippert would be suing Williamsburg to shut down the supply of those products. No other effort was made by Lippert to mitigate the damage done to Williamsburg by Lippert's false statements about Williamsburg's tri-

fold sofa/beds.

16. Lippert and its related business entities have filed numerous patent infringement lawsuits against many parties. A copy of the PACER report for Lippert, showing NOS 830 cases (for patent infringement) is attached hereto as Exhibit 8. Accordingly, a threat by Lippert to sue for patent infringement is a credible threat that such a lawsuit may be filed.

17. Lippert does not always sue promptly for patent infringement. For example, on September 17, 2008 Lippert accused MOR/ryde of patent infringement, as shown in Exhibit 9 attached hereto. On December 3, 2008, MOR/ryde provided a detailed response explaining why the accused products did not infringe upon Lippert's patent, a copy of which is attached hereto as Exhibit 10. Lippert provided no response at all to MOR/ryde until February 4, 2014, when it had hired a different law firm and renewed the threat of patent infringement litigation, without any further comment regarding MOR/ryde's previous explanation, as shown in Exhibit 11 attached hereto. In the meantime, MOR/ryde had substantially increased its sales of accused products. Ultimately, Lippert sued MOR/ryde for patent infringement, on October 30, 2014, Case No. 3:14-cv-01999 in the United States District Court for the Northern District of Indiana. Accordingly, Lippert's silence, even for several years, and even in the face of significant countervailing evidence by an accused infringer, is no assurance that it will not later sue for patent infringement, at a point in time when the potential infringement damages can be much higher.

18. Accordingly, Williamsburg has a reasonable and good faith belief that it and/or its customers will be sued for patent infringement by Lippert, based upon products made by Williamsburg and for which Williamsburg may be liable to defend and/or indemnify its customers. Williamsburg denies that infringement, and a case of actual controversy now exists between the

parties, within the subject matter and personal jurisdiction of this court.

**BACKGROUND FACTS AS TO THE '330 PATENT AND RELEVANT PRIOR ART**

19. The "effective filing date" for the '330 patent is January 30, 2012, because the application for the '330 patent was filed on January 28, 2013, based upon a provisional patent application filed on January 30, 2012.

20. More than one year before January 30, 2012, the invention claimed in the '330 patent was publicly disclosed, in public use, on sale, and otherwise available to the public, as a result of actions taken by third parties having no connection or relation to any of the named inventors of the '330 patent, and who did not obtain the subject matter of the claimed invention directly or indirectly from any of the named inventors.

21. More specifically, Patrick Edward Hutmacher is an adult, at least 72 years of age, and a citizen of the United States of America, residing at 573 Shoreline drive, Grayslake, Illinois, 60030. During 2010, Mr. Hutmacher was a consultant for Flair Interiors Inc., of 1010 Eisenhower Drive South, Goshen, Indiana 46526 ("Flair"). In that capacity, on August 24, 2010, he visited a furniture store located at 4618 West Elm Street, McHenry, Illinois 60050, seeking ideas for new products which could be sold by Flair, and possibly by Shoehorn Furnishings, LLC, of Quincy, Illinois, a business which he co-owned. While at that McHenry store, he purchased the tri-fold chair/bed shown in the four photographs A-D below:

A.



B.



C.



D.



22. The person shown in Photograph B is Mark Hryniewieki, who sold Mr. Hutmacher the chair/bed at the McHenry store, and who Mr. Hutmacher understand to be the store owner.

23. Photographs A-D were taken at or about 2:41:25 PM on August 24, 2010 by Mr. Hutmacher, using his Apple iPhone 3GS. Mr. Hutmacher normally kept a photographic record of the pictures he had taken for business and other purposes, and that record automatically included the GPS location of the picture, time, date, etc., which were recorded for those pictures as they were taken, in the manner shown below:




This particular record is for one of the pictures of the tr-fold chair bed of Photographs A-D.

24. After purchasing the tri-fold chair/bed shown in Photographs A-D and one other product (a sleeper/storage unit) from the McHenry furniture store, Mr. Hutmacher brought them to Flair for consideration as the basis for new as products to be made by Flair. As it turns out, Flair did decide to manufacture the other product for him to sell through Shoehorn Furnishings, a product he called the “Continental” model. However, while the tri-fold chair/bed was placed in Flair’s showroom and offered for sale, starting on or about September 9, 2010, no actual commercial sales resulted, at least to his knowledge. Mr. Hutmacher assumes the bed shown in Photographs A-D was ultimately sold or given by Flair to an employee or related party, but only as the item itself and not and the basis for volume purchases.

25. On September 9, 2010, Mark Hryniewieki from the McHenry furniture store brought a second tri-fold chair/bed of the same type to Flair, in an attempt to work out a business arrangement for the supply of such products to Flair. No such arrangement was ultimately entered into, but that chair/bed was also placed in the Flair showroom to see if any RV customers were interested in purchasing products of that type from Flair. The following photographs show that second chair/bed as displayed in Flair’s showroom on September 9, 2010:

E.



F.



G.



H.



I.



J.



The time, date, location record for these photographs is as shown:



26. In approximately Spring of 2011, with no commercial sales for this type of tri-fold chair/bed having occurred through Flair, Mr. Hutmacher took the chair shown in Photographs E-J to Williamsburg to attempt to interest them in making such products. He met with Gus and Lance Feiler at Williamsburg in Nappanee, Indiana. At that time, Gus expressed little interest in such products, but Lance indicated to Mr. Hutmacher that he believed it had potential. It is Mr. Hutmacher's understanding that Lance then used this product as the basis for the wider tri-fold sofa/bed product that Williamsburg marketed under the "Visionary" model name. Mr. Hutmacher recalls seeing a prototype of that Visionary product in approximately October, 2011, which was proposed to him for sale by Shoehorn Furnishings, although he understood that Williamsburg would also be marketing that product to the RV industry.

27. On September 15, 2011, Mr. Hutmacher saw a similar tri-fold chair/bed offered for sale at the Shanghai Furniture show, this one having been made by Bada Baqiang Furniture Co., of Langfandg, China. The following photographs show that product:

K.



L.



M.



The time, date, location record for these photographs is as shown:



28. Mr. Hutmacher himself, through his Shoehorn Furnishings business, displayed the tri-fold chair/bed product made by Williamsburg at the High Point Furniture Show, on October 23, 2011. Attached is a photograph of that product for sale at the show:

N.



The time, date, location record for that photograph is as shown:



29. It is Mr. Hutmacher's understanding from discussions with Mark Hyrniewieki, that the tri-fold chair/beds shown in Photographs A-D and E-J were made by a furniture company in Turkey and imported into the United States.

30. A copy of Mr. Hutmacher's executed affidavit attesting to the facts of ¶21-29 is attached hereto as Exhibit 12.

31. Timothy Mark Hooley is an adult, at least 64 years of age, and a citizen of the United States of America, residing at 3703 St. Andrews Place, Elkhart, Indiana 46517.

32. During 2010, Mr. Hooley was employed by Flair Interiors Inc., of 1010 Eisenhower Drive South, Goshen, Indiana 46526 ("Flair"). His position within Flair was Director of Engineering/Product Development.

33. Mr. Hooley recalls that in the Fall of 2010, probably September, Patrick Hutmacher arranged for Flair to receive the tri-fold chair/bed shown in the following photographs:

E.



F.



G.



H.



I.



J.



34. These photographs show the tri-fold chair/bed in the Flair showroom in Goshen, Indiana, which Mr. Hooley recognizes from having passed through that showroom many times at work.

35. The tri-fold chair/bed shown in these photographs was placed in the Flair showroom in the Fall of 2010, and was offered for examination by and sale to any of the potential customers passing through that showroom. Mr. Hooley recalls the tri-fold chair/bed being in that showroom for approximately six months, because he noticed it there frequently, as he passed through that showroom.

36. Shortly after receiving that tri-fold chair bed, Flair began to experiment with modifications to that product to make it more acceptable to the recreational vehicle market. Mr. Hooley supervised those modifications. Later in the Fall of 2010, Flair created a tri-fold sofa/bed prototype based upon the tri-fold chair/bed, but designed to be wider so as to fit more than one person. In late 2010, Flair also placed that tri-fold sofa/bed in its showroom in Goshen, Indiana, to

offer it for examination by and sale to any of the potential customers passing through that showroom.

37. During 2010, including in the Fall of that year, potential customers (as well as other persons coming into Flair's place of business) frequently entered that showroom and were able to view the products that Flair was offering for sale.

38. A copy of Mr. Hooley's executed affidavit attesting to the facts of ¶31-37 is attached hereto as Exhibit 13.

39. Laurence George Feiler, III, ("Mr. Feiler") is an adult, at least 73 years of age, and a citizen of the United States of America, residing at 5204 Old Gallows Way, Naples, Florida 34105.

40. During 2011, Mr. Feiler was President of Williamsburg Furniture, Inc., of 2096 Cheyenne Street, Nappanee, Indiana 46550. In that capacity, in approximately February or March of 2011, Patrick Hutmacher met with he and Lance Feiler at the Williamsburg place of business and showed them the actual two tri-fold chair/bed products which are depicted in the photographs below:

A.



B.



C.



D.



E.



F.



G.



H.



I.



J.



41. At that time, Mr. Hutmacher presented these two products to Williamsburg, and attempted to interest Williamsburg in manufacturing and selling such products both for Shoehorn Furnishings to resell, and for Williamsburg to sell directly to the RV industry. Initially, Mr. Feiler, himself, was not very interested in doing so because he was involved in developing and marketing an air bed product to the RV industry. However, Lance expressed to Mr. Feiler his interest in these tri-fold chair/bed products at the outset, and Lance promptly began to develop a related, wider product, a tri-fold sofa/bed product for RV use.

42. Lance developed a prototype tri-fold sofa/bed product using essentially the same structural mechanism as was used in the tri-fold chair/beds (allowing for the wider size), and Mr. Feiler and Lance showed that prototype to various persons of Forest River, Inc., and of Coachmen Industries later in 2011 in an effort to interest them in purchasing such products from Williamsburg.

Mr. Feiler had previously been contacted by Coachmen, and informed that they were not completely satisfied with the air mattress sleeper products they had been purchasing from Lippert Components, Inc., and Mr. Feiler was seeking to offer Williamsburg products as a replacement for those Lippert products. As a result, Coachmen agreed to purchase the new tri-fold sofa/bed product from Williamsburg, and Williamsburg applied the "Visionary" model name to that product.

43. In the Fall of 2011, Williamsburg provided a Visionary tri-fold sofa/bed to Coachmen for use in a travel trailer to be displayed and offered for sale at the 2011 R.V.I.A trade show in Louisville, Kentucky. That trade show took place from November 29, 2011 until December 1, 2011. The Visionary products was a replacement for the prior Lippert sleeper products in the Coachmen travel trailers. The Visionary product was on display in a Coachmen travel trailer during that 2011 trade show, and is shown in the following photographs taken at that trade show:

O.



P.



Q.



R.




44. The advertisement shown in Photograph "R" and the "hang tag" attached hereto as Exhibit 16 (and shown attached to the tri-fold sofa/bed in Photographs O-Q) were created to promote the Visionary products at that 2011 R.V.I.A. trade show.

45. On November 28, 2011, Williamsburg had its attorney mail a patent application to the United States Patent and Trademark Office ("USPTO"), seeking patent protection for design aspects of the Visionary product, but not seeking patent protection for the structural mechanism found in the tri-fold chair/beds brought to Williamsburg by Patrick Hutmacher. The USPTO received that application and granted a formal filing date of December 9, 2011. Later, on June 17, 2014, the USPTO granted a patent, D707,055, on one of the Visionary designs disclosed in the patent application. This information is confirmed in the internet Public Pair records of the USPTO for

patent application serial number 29/395,171.

46. It is Mr. Feiler's understanding from discussions with Coachmen and noting Williamsburg's sales of Visionary products at that point in time, that the Visionary products displaced Lippert air mattress sleeper products in Coachmen travel trailers, in that Williamsburg received sales from Coachmen which had previously been made by Lippert.

47. A copy of Mr. Feiler's executed affidavit attesting to the facts of ¶39-46 is attached hereto as Exhibit 14.

48. A copy of the first page of U.S. Design Patent 707,055, issued on June 17, 2014, is attached hereto as Exhibit 15.

49. The tri-fold chair/bed shown above in Photographs A-J contain substantially the same structure recited in Claim 1 of the '330 patent, with the exception that the photographs show a "chair" of normally narrower width than would be considered a "sofa," as set forth in the preamble of the '330 patent.

50. The tri-fold sofa/bed shown above in Photographs O-R contains substantially the same structure recited in Claim 1 of the '330 patent. The tri-fold sofa/bed created by Flair and offered for sale in the Flair showroom in the Fall of 2010, as described in ¶36 above, contained substantially the same structure recited in Claim 1 of the '330 patent.

## <u>BACKGROUND FACTS AS TO LIPPERT'S ALLEGED INVENTION OF THE '330 PATENT</u>

51. Upon information and belief:

a. Lippert became aware of the Williamsburg tri-fold sofa/bed, and sales of that

product to Coachmen, prior to November 29, 2011,

b. Lippert attended the 2011 R.V.I.A. trade show in Louisville, KY, and saw the Williamsburg tri-fold sofa/bed at that trade show,

c. Lippert first conceived of the claimed invention of the ‘330 patent after becoming aware of the Williamsburg tri-fold sofa/bed,

d. Lippert first reduced to practice the claimed invention of the ‘330 patent after becoming aware of the Williamsburg tri-fold sofa/bed,

e. Prior to inventing the claimed subject matter of the ‘300 patent, Lippert discovered that it lost sales to Coachmen as a result of the Williamsburg tri-fold sofa/bed, and

f. Lippert failed to inform the United States Patent and Trademark Office (“USPTO”) that the Williamsburg tri-fold sofa/bed was relevant prior art and material with respect to patentability of the claimed subject matter of the ‘330 patent.

52. Ryan Smith was an officer and/or managing agent of Lippert during prosecution of the application for the ‘330 patent. Ryan Smith is not an original inventor of the claimed subject matter of the ‘330 patent. Ryan Smith became aware of the Williamsburg tri-fold sofa/bed prior to January 30, 2012. Ryan Smith was associated with and participated in the filing and prosecution of the application for the ‘330 patent. Ryan Smith did not inform the USPTO that the Williamsburg tri-fold sofa/bed was relevant prior art, or that it was material to patentability with respect to claimed subject matter of the ‘330 patent. The Williamsburg tri-fold sofa/bed was not cumulative of information that was of record in the application for the ‘330 patent, as to the scope and content of prior art or as to inventorship. The Williamsburg tri-fold sofa/bed establishes a prima facie case of unpatentability as to at least one claim of the ‘330 patent. The USPTO would not have allowed at

least Claim 1 of the ‘330 patent if it had known about the Williamsburg tri-fold sofa/bed as prior art.

53. Ryan Smith signed a Declaration which was filed with the USPTO in connection with the application for the ‘330 patent, attesting that he was an “original inventor” of a claimed invention in the application. A copy of that Declaration is attached hereto as Exhibit 17. Mr. Smith was not allowed to sign that Declaration unless he had reviewed and understood the contents of the patent application, and was aware of his duty of disclosure under 37 C.F.R. 1.56.

54. Acting on both his and Lippert’s behalf, Mr. Smith intentionally filed the Declaration for the purpose of obtaining the ‘330 patent with himself listed as one of the inventors. Mr. Smith knew or should have known that he was not an original inventor of the claimed subject matter in that patent application. Mr. Smith knew or should have known that the USPTO would not issue the ‘330 patent with him listed as an inventor unless he signed and filed that Declaration. Mr. Smith, on behalf of himself and Lippert, executed and filed with Declaration with the specific intent that the USPTO rely upon the accuracy of Mr. Smith’s statements in the Declaration, including Mr. Smith’s assertion therein that he was one of the inventors. The USPTO did rely upon the Declaration in allowing the patent application and listing Mr. Smith as one of the inventors on the ‘330 patent. Correct inventorship was material to the prosecution of the application for the ‘330 patent. The USPTO would not have allowed the ‘330 patent and listed Mr. Smith as one of the inventors if he has not filed the Declaration. As a result of Mr. Smith’s submission of a false Declaration to the USPTO, the ‘330 patent is defective for listing incorrect inventorship. Mr. Smith filed the Declaration with himself listed as one of the inventors at least in part because he believed being named on the ‘330 patent would increase his prestige, provide financial gain, and/or provide greater likelihood of career advancement.

## PATENT INVALIDITY AND UNENFORCEABILITY

55. The ‘330 patent is invalid under 35 U.S.C. §102(a) (pre-AIA) because the claimed invention was known and used by others in this country before the invention thereof by the applicant for the patent. Specifically, Williamsburg was manufacturing and displaying a substantially identical tri-fold sofa/bed and offering it for sale prior to Lippert’s alleged invention of the ‘330 patent.

56. The ‘330 patent is invalid under 35 U.S.C. §102(b) (pre-AIA) because the claimed invention was in public use and on sale in this country more than one year prior to the date of the application for patent in the United States. Specifically, Flair was displaying and using a substantially identical tri-fold sofa/bed to solicit sales in its showroom in the Fall of 2010.

57. The ‘330 patent is invalid under 35 U.S.C. §102(f) (pre-AIA) because Ryan Smith did not himself invent the subject matter sought to be patented.

58. The ‘330 patent is invalid under 35 U.S.C. §103 because the differences between the claimed invention of the ‘330 patent and the prior art tri-fold chair/bed purchased by Mr. Hutmacher on August 24, 2010 are such that the claimed invention as a whole would have been obvious, before the “invention” of the ‘330 patent was made, to a party having ordinary skill in the art to which that invention pertains.

59. The ‘330 patent is unenforceable due to the inequitable conduct of Lippert and/or Mr. Smith in failing of their respective duties of disclosure and in fraudulent conduct during the prosecution of the application for the ‘330 patent.

## TRIAL BY JURY

Williamsburg requests that, to the fullest extent permitted by law, all of the issues in this case

be tried by a jury.

## RELIEF SOUGHT FROM THIS COURT

Williamsburg requests that this Court enter judgement in favor on Williamsburg and against Lippert, granting the following relief:

a. a Declaration that the Williamsburg tri-fold sofa/bed does not infringe the '330 patent,

b. a Declaration that the '330 patent is not valid and/or is not enforceable,

c. an injunction against Lippert making any allegations to any third party that the tri-fold sofa/bed infringes upon the '330 patent,

d. an award of damages against Lippert for violating Williamsburg's rights under 15 U.S.C. §1125(a) and causing injury to Williamsburg, and

e. all such other relief as the Court may deem just and proper.

Dated: October 21, 2019

Respectfully submitted,

*/s/ James M. Lennon*
James M. Lennon (No. 4570)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
jlennon@devlinlawfirm.com

Ryan M. Fountain (*pro hac vice* to be filed)
420 Lincoln Way West
Mishawaka, IN 46544

Telephone: (574) 258-9296
Facsimile: (574) 247-1237
ryanfountain@aol.com

*Attorneys for Plaintiff Williamsburg Furniture, Inc.*