IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAMSBURG FURNITURE, INC. <br><br> Plaintiff, <br><br> v. <br><br> LIPPERT COMPONENTS, INC., <br><br> Defendant. | Civil Action No. 19-1993-CFC |

James Lennon, DEVLIN LAW FIRM LLC, Wilmington, Delaware

*Counsel for Plaintiff*

Francis DiGiovanni, Thatcher Rahmeier, DRINKER BIDDLE & REATH LLP, Wilmington, Delaware; Andrew McCoy, Kendall Griffin, Reid Dodge, FAEGRE BAKER DANIELS LLP, Indianapolis, Indiana

*Counsel for Defendant*

**MEMORANDUM OPINION**

January 21, 2020
Wilmington, Delaware

                                    _____
                                            COLM F. CONNOLLY
                                         UNITED STATES DISTRICT JUDGE

Plaintiff Williamsburg Furniture Inc. filed a complaint for (1) a declaratory judgment that it does not infringe U.S. Patent No. 8,739,300 (the #330 patent) because "that patent is invalid and/or unenforceable" and (2) a judgment against Defendant Lippert Components Inc. for false advertising and unfair competition in violation of 15 U.S.C. §1125(a)(1)(B) (the Lanham Act claim). D.I. 1 at 1. In its Answer to the Complaint, Lippert asserted counterclaims against Williamsburg for infringement of the #330 patent and U.S. Patent Nos. 8,984,690 and 9,173,502. D.I. 8 ¶ III.4. Before me is Lippert's motion to transfer venue under 28 U.S.C. § 1404(a). D.I. 13. Lippert requests that I transfer the case to the Northern District of Indiana. *Id.* at 1. For the reasons discussed below, I will grant Lippert's request.

I. **BACKGROUND**

Delaware has one—and only one—connection to this case: it is Lippert's place of incorporation. The Northern District of Indiana, on the other hand, has numerous connections to this case. Both parties are headquartered and have a place of business in the Northern District. *See* D.I. 14 at 3–4; D.I. 20 at 2–3. The accused products are designed and manufactured in the Northern District. D.I. 20 at 12. The majority of the third parties and third-party witnesses that Williamsburg

identified in its Complaint are located in the Northern District. *See* D.I. 1 ¶¶ 7, 9, 11, 13, 21–42, 52–54; D.I. 14 at 8–9; D.I. 20 at 6. And several of the asserted claims arise from events that occurred in the Northern District.

## II. DISCUSSION

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the Northern District of Indiana. D.I. 14 at 11; D.I. 20 at 9. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to the Northern District of Indiana.

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant[s], the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of

2

justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

### 1. Plaintiff's Forum Preference

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. Lippert argues that Williamsburg's forum choice "is entitled to minimal (if any) weight in Williamsburg's favor." D.I. 14 at 13. Williamsburg contends that I should give its forum choice "paramount consideration." D.I. 20 at 10.

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, I agree with Williamsburg that binding Third Circuit law compels me to treat its forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

Lippert, however, asks me to ignore *Shutte*'s unambiguous language (and *Jumara*'s endorsement of *Shutte*) and instead give Williamsburg's forum choice

4

"minimal[] weight" because the parties are located in Indiana and "the facts giving rise to this case have no connection with [Delaware]." *See* D.I. 14 at 12–13. Lippert cites in support of its position certain opinions issued by district courts in the Third Circuit that appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's "home forum." *See id.* at 12. I am not, however, persuaded that these opinions are consistent with *Shutte*. I will instead follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975).

Like Judge Stapleton, I read *Shutte*'s "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge Stapleton explained in rejecting the "home-turf" rule argued by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

5

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not influence the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) compels a different conclusion. In *Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a) motion to transfer a patent case filed here by a non–United States company. *Id.* at 1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's]

6

incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Id.* I understand this statement, however, to apply only when the plaintiff, like the plaintiff in *Link_A_Media*, is a non–United States company. I draw this inference because the court cited in support of its statement two Supreme Court decisions, *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), neither of which involved transfer motions brought pursuant to § 1404(a). Rather, in both *Sinochem* and *Piper Aircraft*, the Supreme Court reviewed dismissals of actions filed by non–United States plaintiffs based on the common-law *forum non conveniens* doctrine. As the Court explained in *Piper Aircraft*, "1404(a) transfers are different than dismissals on the ground of *forum non conveniens*." 454 U.S. at 253. Unlike § 1404(a), "[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (second alteration in

original) (internal quotation marks and citation omitted). The doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law" and thus enables a district court to dismiss the case where it would be otherwise "required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251 (internal quotation marks and citation omitted). Because these concerns about foreign law and comparative law issues are not implicated by a § 1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits "less deference" for § 1404(a) purposes only if the plaintiff does not reside in the United States.

In this case, Williamsburg is a domestic corporation, and therefore I will follow *Shutte* and give Williamsburg's forum choice paramount consideration in balancing the *Jumara* factors.

### 2. Lippert's Forum Preference

The parties agree that this factor favors transfer. D.I. 13 at 13; D.I. 20 at 11.

### 3. Whether the Claim Arose Elsewhere

This factor favors transfer because several of the asserted claims arose from events that occurred in the Northern District of Indiana and none of the claims arose from events that occurred in Delaware. Williamsburg's declaratory judgment claim is based on: (1) correspondence that occurred in the Northern

8

District between Lippert and Allure, a company located in the Northern District, D.I. 1 ¶ 8; D.I. 14 at 5; D.I. 20 at 6; (2) correspondence between Lippert's pre-suit counsel located near the Northern District and counsel for Williamsburg located in the Northern District, D.I. 1 ¶ 9; D.I. 14 at 5–6, 14; (3) Lippert's statements to Heartland, a company based in the Northern District, D.I. 1 ¶ 11; D.I. 14 at 6; D.I. 20 at 6; and (4) Lippert's correspondence with MORyde, a company based in the Northern District, and the ensuing lawsuit that Lippert brought against MORyde in the Northern District, D.I. 1 ¶ 17; D.I. 14 at 6. Moreover, Williamsburg's Lanham Act Claims are based on Lippert's alleged statements to Williamsburg's customers located in the Northern District. D.I. 1 ¶¶ 5, 14; D.I. 14 at 7.

According to Williamsburg, its invalidity and fraud claims arose from events that occurred outside of the Northern District of Indiana. It asserts that the invalidity claims are based on Williamsburg's "marketing events" in Louisville, Kentucky. D.I. 1 ¶¶ 43, 56; D.I. 20 at 12. And it asserts that the fraud claim arose from Lippert's filing of applications for patents with the United States Patent and Trademark office, located in Alexandria, Virginia. D.I. 1 ¶¶ 54, 59; D.I. 20 at 6, 12.

Finally, Lippert's patent infringement counterclaims are based on Williamsburg's design, manufacture, use, sales, offers to sell, and marketing of the accused products. Lippert asserts that those activities occur out of Williamsburg's

9

headquarters located in the Northern District of Indiana. D.I. 14 at 14. Williamsburg admits that it develops, designs, and manufactures the accused products in the Northern District, D.I. 20 at 12, but it asserts that other infringing activities occur throughout the country because the accused products are sold and used throughout the country, *id.* at 11.

Given that at least some of the asserted claims arose in whole or in part in the Northern District and no claims arose in Delaware, this factor favors transfer.

### 4. The Convenience of The Parties as Indicated by Their Relative Physical and Financial Condition

This factor weighs slightly against transfer. "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001).

Lippert has shown that there would be advantages to litigating this case in the Northern District of Indiana as opposed to Delaware. Neither party has a physical presence or employees in Delaware. D.I. 14 at 15. Instead, both parties are headquartered and have places of business in the Northern District. *Id.* at 15. Also, none of the claims arose in Delaware while some arose in the Northern District. Finally, the parties have not alleged that any related third parties or third-party witnesses are located in Delaware while a majority of the third parties identified in the Complaint are located in the Northern District.

10

Still, because Lippert, a Delaware corporation, has not established that Delaware is a uniquely or unexpectedly burdensome forum, the convenience of the parties weighs slightly against transfer. *See ADE*, 138 F. Supp. at 573.

### 5. The Convenience of Witnesses

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). In considering this factor, "the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses . . . who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

Nothing in the parties' filings suggests that anyone—whether they be third parties or employees—would be unwilling to testify at trial in Delaware. Accordingly, following *Jumara*, even though neither party has identified a witness who resides in Delaware and it is undisputed that many of the witnesses and

11

relevant third parties are located in Northern District of Indiana, I will give this factor no weight and treat it as neutral.

### 6. The Location of Books and Records

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. In this case, Lippert has not identified with particularity any evidence that could not be produced in Delaware. On the other hand, there are no relevant books or records in Delaware. Accordingly, this factor is neutral.

### 7. Enforceability of The Judgment

The parties agree that this factor is neutral. D.I. 14 at 18; D.I. 20 at 14.

### 8. Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. This factor strongly favors transfer. Neither Williamsburg nor Lippert has a connection with Delaware other than Lippert's incorporation status. By contrast, both companies are headquartered in the Northern District. Moreover, all but eight of the 21 third parties identified in the Complaint reside in the Northern District of Indiana. D.I. 14 at 8–9. Five of those remaining third parties reside in Illinois, which is closer to Indiana than Delaware; the other three are located in China, Turkey, and Florida

and would find the Northern District of Indiana just as convenient as Delaware. *Id.* Finally, the parties have not indicated that any evidence is located in Delaware. Yet because some of the asserted claims arose in the Northern District and the accused products are designed and manufactured in the Northern District, evidence is likely located in the Northern District.

### 9. Relative Administrative Difficulty Due to Court Congestion

Given the districts' relative caseloads, this factor favors transfer. According to the most recent data provided by the Administrative Office of the United States Courts, 2,400 civil cases were filed in this District between July 1, 2018 and June 30, 2019. *See* Admin. Office of the U.S. Courts, Table C-3, https://www.uscourts.gov/statistics/table/c-3/statistical-tables-federal-judiciary/2019/06/30. By comparison, 2,191 civil cases were filed in the Northern District of Indiana. *Id.*

The data also shows that as of June 30, 2019 there were 1,093 weighted filings per judge in this district as compared to 467 weighted filings per judge in the Northern District. *See* Admin. Office of the U.S. Courts, *Judicial Caseload Profiles*, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/06/30-1. Weighted filings "account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Admin. Office of the U.S. Courts, *Explanation of Selected Terms*,

13

https://www.uscourts.gov/sites/default/files/explanation-selected-terms-district-march-2012_0.pdf. Cases that require substantially more judicial resources than the average civil case because of their complexity and scope receive a higher weight. *Id.*

Given that the number of weighted filings are significantly higher in the District of Delaware than in the Northern District, this factor favors transfer.

### 10. Local Interest in Deciding Local Controversies at Home

This factor is neutral. Both Indiana and Delaware have an interest in adjudicating claims against their citizens. In this case, Lippert is a citizen of Delaware and Indiana, and Williamsburg is a citizen of Indiana.

### 11. Public Policies of The Fora

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). That concern is irrelevant here, however, since Williamsburg is not a Delaware corporation, and Lippert, which is a Delaware corporation, does not want to litigate here. *See NST Glob., LLC v. Sig Sauer, Inc.*, 2019 WL 2994696, at *3 (D. Del. July 9, 2019). This factor is thus neutral.

### 12. Familiarity of The Trial Judges with The Applicable State Law in Diversity Cases

The parties agree that this factor is neutral. D.I. 14 at 22; D.I. 20 at 16.

\* \* \* \* \*

In sum, of the 12 *Jumara* factors, four weigh in favor of transfer, two weigh against transfer, and six are neutral. Having considered the factors in their totality and treated Williamsburg's choice of this forum as a paramount consideration, I find that Lippert has demonstrated that the *Jumara* factors weigh strongly in favor of transfer. I will therefore grant Lippert's request to transfer the case to the Northern District of Indiana.

The Court will enter an order consistent with this Memorandum Opinion.